Answer to our question, let me just turn to each of the parties. First for the appellant, please, and if you could just state your name for the record, please, as you probably know, we have a an electronic recording system where we record all of the all of the arguments. And so you'll have to come up to the podium. It's sort of triggered from the from the microphone. And if you would just state your name and appearance on the record, please, Elizabeth Rader from Alston and Byrd on behalf of the appellant, Public Resource.Org, Inc. And how would you like to answer that question? Can we answer that question of whether they're an interested party? We don't think they're an interested party, certainly not from our point of view. And you wish for us to proceed now? Yes, we wish to proceed. OK, and let me turn to the state of Georgia, the Code Revision Commission. Yes, Your Honor, Lisa Pavento for the Code Revision Commission in the state of Georgia. It is our position that the Board of Regents is not an interested party in this matter. All right. So then you would have us proceed as well with the panel as it has been constituted. Yes, Your Honor. And again, just so I'm clear, Ms. Rader, you would have us proceed as well with the panel as it has been constituted. That's correct, Your Honor. All right. Then we will proceed. Valerie, would you ask Judge Hall if she could join us? Please be seated again and make yourselves comfortable. We will proceed. Before we do, I just wanted to be clear for appellant, Ms. Rader, you have broken up your argument and you're going to do five minutes initially, and Ms. Edelman will be representing and speaking for the ACLU for five minutes, and then you've reserved five for rebuttal. That's correct, Your Honor. OK, thank you. And with that, you may proceed. Good morning. Elizabeth Rader on behalf of public.resource.org, Inc. With me at council table is my colleague, Sarah LaFontano, and also Ms. Edelman of the American Civil Liberties Union. I am going to focus my argument on the copyright law issues, and Ms. Edelman will address the First Amendment and due process issues. And I'd like to thank the court for hearing oral argument in this case. Your Honors, every act of the Georgia legislature begins with these words, an act to amend the official code of Georgia annotated. So the official code of Georgia annotated is an edict of government. It is the law. Public resource, in an effort to better inform its fellow citizens of the law, posted a more useful version of the official code. Public resource did so without permission from the state, and it was enjoined by the district court for speaking the law without a license. This case is about the right to speak and distribute edicts of government, and about whether a court can enforce copyright to enjoin a citizen from speaking and distributing the law. Edicts of government are not subject to copyright under federal common law, and that's been the law for over 100 years. It's part of the role of the judiciary to enforce the edicts of government exception to copyright. Georgia's General Assembly enacts the statutes in the OCGA, but it does so acting for the people of Georgia, who are themselves the authors of the statutes. In 1976, the General Assembly created a Code Revision Study Committee to conduct a study of the subject of code revision, and that committee recommended to the Assembly that they create a Code Revision Commission, which it did, and that's one of the plaintiffs in this action. In that way, the General Assembly decided that the only official code of Georgia should be annotated. The statutory materials and numbers without the state's permission... Ms. Rader, let me ask you a question this way. When I looked at the code itself, 1-1-1, right through the balance of it, in 1-1-7, one provision of the code says the following. It says, unless otherwise provided in the code the descriptive headings, catch lines immediately preceding, etc., do not constitute part of the law and shall in no manner limit or expand the construction of any code section. All historical citations, title, chapter, analyses, and notes set out in this code are given for the purpose of convenient reference and do not constitute part of the law. What are we supposed to take from this disclaimer by the legislative body that the annotations are not part of the law and do not bind anyone as law? It's a correct statement that the annotations are not themselves laws and that they are not enacted by the legislature. But the issue here is not just whether it's law, it's whether it's an edict of the government. Therefore, since the government decided there should be annotations to the code and because the government and through the code commission supervises the preparation of the annotations very closely and very carefully, has complete authority over them and has the authority to reject them if it doesn't like them, it makes the whole work an edict of government. Notwithstanding that it's simply an annotation, a collection of headnotes, cases, citations to statutes, cross-references that have no binding effect. I mean, does it cast any legal shadow where the state of Georgia through its legislative body says it isn't the law and has no binding effect? The statutes have a binding effect and you need the annotations to actually use the code effectively. Without the indexes you might not be able to find the relevant law. And additionally, not all the laws are organized so that all the subject matter is under the same heading or even in the same title. So the cross-references are absolutely necessary to find all the relevant parts of law. Let me ask a slightly different question. What should we make of the fact that the Copyright Act itself expressly carves out publications of the federal government in Section 105 but says nothing about state governments? Is there any inference we ought to draw from that? I think the inference, and I believe it's the fact, is that the legislature thought that went without saying because of the 100 or more years of common law. What would you say to the fact that the Copyright Office's compendium seems to support the state's view? The Copyright Office... I mean, there's no question it doesn't bind this court. I'm simply asking whether it is illuminative or whether it's persuasive in any way. We don't find it persuasive in any way. I think it simply reflects the general rule that annotations by a private publisher are protectable. It's just wrong to the extent it implies that a state-sponsored, state-supervised, state-mandated collection of annotations is copyrightable by that state and enforceable by that state against a citizen speaking. Would there be some government-authorized documents that would be copyrightable in your view? If this isn't, tell me what the difference might otherwise be. Well, there have been examples, I think, in the state's brief of official government-issued documents, a tourist map, maybe the design on the license plate, that don't have to do with the law. But that would be copyrightable, even though it's put out by the state? It's put out by the state. It's an edict, if you will, in some form or decree in some manner of the state. That would be copyrightable by your lights, would it not? We haven't considered them edicts, but if the court decides they're edicts, then they would not be copyrighted by a state. Let me give you a different example. Suppose the state of Georgia were to create a public broadcasting system and were to produce some shows for children like Sesame Street or whatever. Is there any doubt in your mind that the state could copyright those shows? And if the answer is, yeah, they could do that, just tell me what the essential difference is between what I'm asking about and what you have here. The state can copyright that because it's not an edict. It's just a provision of an extra service for the citizens. Now, if there were a show about civics that was meant to instruct children on the official law of Georgia, that might be another matter, but I don't think that's a hypothetical. I've got it. Thank you. And you've reserved your full period of time for rebuttal. Thank you, Your Honor. Good morning. I guess I should say good afternoon perhaps. It's still morning. May it please the Court. I'm Vera Edelman, appearing on behalf of Amici American Civil Liberties Union and a group of nonprofit organizations that want to make sure that this Court considers the rights of the public in this case. The public, which is left only with the unannotated, unofficial version of the code unless they pay more than $400 to access the code that the OCGA itself says they must use or else appear and live in life at their own peril without knowing the true law. The public who would be led to believe— Well, that language is taken from a district court opinion. So how would that have any effect at all on any subsequent party in any subsequent case citing to the code? It might be binding in that judge's courtroom in that particular case, but it certainly doesn't have any transcending force of law, does it? And this goes to Your Honor's previous questions about whether the annotations are themselves the law, and our position is that they are. And here the two factors that matter are both the state authorship, approval, editorial capacity, and publication of the contents, and also the contents themselves. Because courts rely on the annotations, the comments, the editorial notes as binding authoritative law. They look to those annotations to understand what the law means and what it reaches. For example, on page 9 of our brief, we offer a string site of Supreme Court of Georgia cases that rely specifically on the annotations and not simply the statutory text. So this opinion from this district court is annotated in the official code? Yes, it is. Okay. Yes. I should have made that clear. And the public has a real interest in accessing the law here because the only freely available version misleads them. It misrepresents what the true law is. An individual reading that version would be led to believe that there are such offenses as sodomy and private possession of pornography. When, if they then spent more than $400 to read the annotated version, they would learn that courts have protected those rights and held those Georgia statutes to be unconstitutional. So we are here to make sure that the court considers the public's due process and First Amendment rights Let's start with First Amendment. Spin out the First Amendment argument for me. Suppose this court were to hold that the state of Georgia can copyright this annotation as we construe the meaning of the statute at issue. What then is the First Amendment implication of that? The First Amendment implication is first that people cannot access the law that governs them and second that they can't discuss it. They can't Why can't they access the law? Hasn't the state of Georgia made pretty substantial effort to disgorge this law widely both in print and online? Haven't they made a real effort here? It's not as if they buried this in the night to make it hard for the citizens to know what the law is to the extent somebody wanted to know what all 186 volumes contained. No, but they've put it behind a paywall, a copyrighted paywall of more than $400 and the First Amendment cannot allow that. An individual cannot be forced to pay for the law that governs them both to know what it is and then to be able to discuss it and to try to change it. Well, if they had a compelling interest, could they do it? And if they had narrowly tailored it? Within the First Amendment lens, yes. To the extent we're looking at First Amendment law and starting with the assumption and the question that it passes the statutory test. You say it runs afoul of the First Amendment. I'm just trying to get you to spell out specifically. Presumably you'd say we use strict scrutiny and there'd have to be a compelling reason and it'd have to be narrowly tailored although I don't find any of that in the brief, which is why I'm asking the question. That's correct and here far from a compelling state interest, we believe there's no valid interest at all because what the state is doing is profiting from the law. It claims that it's created this compendium for the benefit of the public. Doesn't it benefit the people to have the state put out an annotated version so it says to anybody who wants to look at it, here's the statute and here are relevant annotated things you must look at or ought to look at in understanding the meaning of the statute, including cases, history, and so on. Doesn't that enlighten and increase the understanding of anyone in the public who wants to understand the law of Georgia? I see that my time is up. No, you take your time. I'm not contending that this isn't a beneficial compendium, but it doesn't benefit the public if it's not truly available to the public without paying more than $400. And it in fact hurts the public if the only freely available version differs materially from the OCGA and misleads the public. It's effectively like false advertising. They say, we have this wonderful product available for you, but you have to pay more than $400. And in fact, the only way to know the law is to access that version. But if you can't pay, here are these misrepresented versions of what the law is as it applies to you. Does it matter what falls into the annotations, whether it's an annotation to a case or whether it's simply a statement of the historical movement of the statute? In 1970 they passed the statute that said, thou shalt not do A and in 1975 they said, thou shalt not do A and B and then in 1980 they said, thou shalt not do A, B, and C. That just to reflect the history of the statute itself. Here, because the state adopts the entire thing as the law, yes. The constants don't matter. The constants matter to the effect that they represent the law. So your position has to be that you can't tease out the annotated part from the rest. That's correct. And my question to you is why not? Because the state doesn't. The reason I say that is courts in copyright do it all the time. Regularly holding aside where it's the state involved, private company A sues to enjoin the publication by another publishing house of B on the grounds they ripped off our stuff. Putting it in the vernacular. And a court comes back and says, I, that's true about these items. It's not true about those items. So this is something courts regularly do sitting in copyright and sitting in equity in copyright fashioning an equitable decree. Why couldn't the court do just that here? Which is of course what the district court did. Because here the state is the author and the publisher of the law, not a private party. And the state has adopted the entire thing as the law. The state has not chosen to go through that parsing. And in fact, in the contract. But your colleague conceded a moment ago when I asked the question that the totality of the question doesn't simply turn on who the author is. Because she had to concede and it's obviously right. That there are things the state can put out as the author and yet can copyright it. Whether it's a map or they put on a production of Sesame Street on a public broadcasting. They can do that and they can copyright that. You don't dispute that. I don't dispute that. I believe there are two things. So the mere fact that they are the author standing alone cannot be reason sufficient. That's correct. So what else is there, if anything, that takes you over the line here? It is the content of the thing that is being claimed to have copyright. So tell me about that. So here it is the official state of the law. And that includes under the contract with LexisNexis. The state has authority over everything from the level of factual detail in the annotations to the type of paper that Lexis is using. The state control here is astounding. The state holds the pen. It is the state's code and it is therefore the official law of the state. And what do you say about the fact that the state chose to tell everybody that it is not the law and doesn't bind anybody. It has no binding effect. That one law cannot change the factual reality. And it is in fact this court's job and ability to decide what the law is. The fact that the state writes something that then enables it to profit from the law doesn't change the reality that the law is the official state of Georgia. Do you suppose the state of Georgia did this because they were seeking to profit financially? Because I rather suspect their profit was pretty modest in this case. I saw somewhere in someone's pleading and you can help me with it, I don't remember where, that the totality of the sum was $85,000 or something like that in a year. Did I have that right? I am not sure, Your Honor. But I regard... If that were correct, whatever else one could say about the state of Georgia with a multi-billion dollar budget, that this is such a modest sum that you can their motive was profit. That is fair. Whatever their motive was, it sure wasn't to make money. If they wanted to make money, they could have done it a whole lot more effectively than they did here. That is fair. I did not mean to impugn the motives of the state. Okay, so you accept A, that the mere fact that they're the author isn't enough to allow you to prevail on your claim. You have to look at what it is that they're actually explicating. And it's the law, you said, and that's different. Tell me why. Because courts rely on the annotations as the binding official authority on what the law means. For example, in Shorter College v. Baptist Convention of Georgia, the Supreme Court of Georgia relied on an OCGA comment to determine the meaning of the statute, which in fact was the issue that the case depended upon. So it relied on the OCGA, which is not freely available to the public, to make a decision about what the law means. And the state itself edits and fully approves the entirety of the OCGA. Every year, it enacts the OCGA into law. And as counsel mentioned, every law that amends that is new in Georgia amends the OCGA. There is no unofficial, unannotated version of the code that functions as law. There is only the version that is published for the citizens to be misled by for free online. Let me ask you a final question. You've gone way over, but you've been answering my questions, so you'll have your rebuttal time. But I just want to know how you make a due process argument here. That seems to me just speaking for myself to be the weakest of the claims. And the reason it seems to me to be weak, and you can comment about it and tell me what I'm misapprehending here, is whatever else happened here this stuff was pretty well published by Georgia. I don't think folks are walking around in the dark here about what the law is. This is not a case where Georgia looks like it's buried anything in the night. Where's the due process claim? It perhaps hasn't buried it in the night, but it has hidden it behind a paywall. So individuals have to pay more than $400 to access it. And in building officials first circuit case, the court specifically held on due process grounds that the reason that maintaining copyright in official law offends the concept of due process. Because where content has the effect of law and carries sanctions, the public has a right to freely access that content. And similarly in Veek, the fifth circuit sitting on bunk was motivated by due process concerns relying on... Right, but the difference in Veek was you're talking about a building code, which obviously has the force of law. And here you have something that is maybe somewhere in between. It's not a statute, it's not an opinion, it's an annotation. Which admittedly they've adopted. That they've adopted and that courts have applied and relied upon. I've got it. Thank you very much. Thank you. Good morning, Ms. Pavento. Good morning. Lisa Pavento for the Code Revision Commission and the State of Georgia, Your Honor. I also have Mr. Tony Askew with me. May it please the Court, there are two main issues on appeal here. The copyrightability of the annotations and fair use. I hope to make three points with respect to those two issues. Two points with respect to copyrightability and one point with respect to fair use. The first point I'd like to make is that there is no edict of government doctrine that is well established. The well established doctrine at issue here is that the laws are not copyrightable. And since the district court correctly found that the annotations are not the law, that doctrine is What are they then when they've become the official part of what the State of Georgia through its legislative body puts out? Yes, Your Honor. If it's not the law and it's not part of the law, what are they doing here? We assert that those annotations are merely helpful directionals. That they direct the person purchasing or reading the OCGA to official interpretations of the law such as case law decisions or even informal interpretations of the law such as law reviews. So those annotations are merely helpful pointers to the people reading the OCGA. They are not required to understand the law. Those judicial decisions themselves are freely available for any person to read. What are we to make of the fact that the legislative body itself at the very beginning in 1-1-1 says the following. The statutory portion of the codification of Georgia laws prepared by the Code Revision Commission and the MeShe Company pursuant to a contract entered into, blah blah blah, is enacted and shall have the effect of statutes enacted by the General Assembly of Georgia. They don't just say, hey, by the way, folks, there's an annotation here that we attach for your help. They say it's enacted and shall have the effect of statutes enacted by the General Assembly and then it goes on to say the statutory portion of such codification shall be merged the verb is merged with annotations, captions, history lines, editorial notes, blah blah blah and shall be known and may be cited as the official code of Georgia annotated. How are we to read what the Georgia legislature had in mind when they tell us right at the beginning of the statute that the statute and the annotations shall be merged? Yes, Your Honor. What does merged mean to you? Merged means to be combined in the same document or work. It does not mean that they are merged into one uncopyrightable unit and looking at 1-1-7. Why not? You assert that as if it and the day and I'm not sure it's quite that clear you accept that the term merge means to combine to bring together to create a single unit of some kind to marry together. Those would be fair definitions, right? Yes, Your Honor. State legislature tells us they have married together. They have combined to create a single unitary object. The code and this other stuff. The other stuff being the annotations. And they not only tell us that, it says it shall have the effect of statutes enacted by the General Assembly of Georgia. How am I to read that together? Yes, Your Honor. They didn't mean what they said? Well, they took it back when they later said in a different portion of the code oh, but by the way, this other stuff doesn't have the effect of law. I'm trying to read the whole thing as a whole and I see this first paragraph telling me maybe one thing and some other portions arguably saying something different. And I'm asking you to tell me how do I read them in pari materia? Yes, Your Honor. We read the first sentence of 1-1-1 to say that the statutory portion, which is the statutes, are that which has the effect of statutes and is enacted. That that's the totality of the meaning of that first sentence. The second sentence, as you mentioned states that that statutory portion that's enacted is merged with the annotations pursuant to the contract with an entity such as Lexis. So we believe that that language pursuant to the contract dictates that the copyright in the annotations remains with the state and then is transferred via license to that entity. So we believe that informs the definition of merge that it doesn't mean that it's merged into one uncopyrightable unit. And then we would also look to 1-1- Even though they unambiguously tell me in 1-1-1 it is merged. Yes, Your Honor. Merged for, but not for the purposes of copyright protection. Well, it doesn't say that. As I read it, it does not say unless otherwise provided in the code, the descriptive headings, catch lines, etc., that it shall be merged except for the purposes of annotation. They would have known how to say that if they wanted to. So you would have me read that in. I would, Your Honor, based on the fact that when the state decided that it would add the annotations the state only made that decision that the annotations would be added as being created by a non-governmental entity and subject to copyright that could be licensed to that entity so that we could get the benefits of the no cost to taxpayers and have those costs borne by the publisher. So when the state legislator decided to add the annotations, it was with that entire strategy or scheme in mind. And so when they're discussing the merger of the annotations and the statutory portion, they mention that that is to be done pursuant to the contract. And the legislative history here indicates that that contract would require that those annotations be subject to the copyrights. I take it the commission though has the final word on what goes in. They have the whip hand on the front end and the whip hand on the back end of this process. Yes, Your Honor. They've hired Lexis to help them out like a law clerk might help me out. But Lexis doesn't control what this commission does or does not put in there any more than a law clerk would control what a judge says. Yes, Your Honor. The state is the author of these annotations, certainly. Let me ask the question in a slightly different way. Although it all basically revolves around the same issue, it seems to me, just speaking for myself. If the state of Georgia has chosen to merge the annotations with the statutes and then characterize the totality of that union as being the annotated laws of the state of Georgia, why should we say they didn't mean what they did and we're going to tease the pieces apart and say, yeah, this is copyrightable, but no, that's not. Why should we do what the state of Georgia quite intentionally chose not to do? Your Honor, we believe that the state of Georgia did intend to create a single work with both the official code and the annotations in it, but that they also intended for those annotations to be encompassed by copyright. The state felt that they could achieve both due process access and, in fact, does achieve due process access to the official code that is in the OCGA by providing the entire OCGA for free viewing at over 60 public institutions. So they can accomplish due process access to the official code while at the same time retaining copyright protections in the annotations themselves. That's because those interests are very different. The interest in having due process access to the code and the interest that is protected or valued by copyright is different. If I want access to the code as John Q. Citizen, I have to pay $400 for it? No, Your Honor, you do not. How do I get the annotated version without paying? The OCGA, the full entire OCGA, including the annotations, is freely available at over 60 public institutions throughout the state. Do I have to go to a library or something like that? Yes, Your Honor, you would need to go to the library. The state also... How about if I went online? Yes, Your Honor. And I looked up the unannotated portion. I thought I read somewhere that there was, at least at some point, a pop-up where I'm informed that, by the way, Marcus, if you're looking at this unannotated version, that ain't the law. You got to look to the annotated version or something like that. Do I have that right? I believe you're referring to the pop-up being that the copywriter's websites to the Georgia Code takes you through the LexisNexis website. That's what I'm referring to. And there is an opening page that states that LexisNexis claims copyright in some of the elements of the webpage itself, but it explicitly excludes the code from any copyright assertions. So there is that page, but it explicitly states that copyright is not being asserted in the code or in the numbering of the code. As I looked at the case law and tried to find some guidance here for this, the best I could do was looking back at some old Supreme Court cases that may still be good law, and there's one in particular I want to ask you about and have you help me with. The case was Banks. It was decided in 1888 by the Supreme Court of the United States. And in that case, the issue was whether a reporter could, on behalf of the state of Ohio, obtain a copyright on volumes of judicial decisions that were exclusively the work of the judges. And so what he had in it were the decisions, but notably as part of the decisions which were created by the judges, you also had headnotes, syllabi, and things like that. Everybody recognized that the headnotes, the syllabi, the summary, if you will, did not have the effect of law. The judicial imprimatur was the holding found in the decision of the court. And the question was whether the reporter could copyright in a bound book the judge's decisions. And the Supreme Court said no. That the material was exclusively the work of the judges, comprising not only the opinion or decisions of the court, but also the statement of the case and the syllabus and the headnote. And they went on to explain, and I want you to tell me whether that case illuminates this one or if it's different, why. In no proper sense, the Supreme Court tells us, albeit a long time ago, can the judge in his judicial capacity preparing an opinion or a decision, the statement of the case, the syllabus, the headnotes, be regarded as their author or their proprietor in the sense of the statute. They're talking about that version of the copyright law. So as to be able to confer any title by assignment on the state sufficient to authorize it to take a copyright for such matter. The question is one of public policy. There has always been a judicial consensus from the time of Wheaton v. Peters. No copyright could, under the statutes passed by Congress, be secure in the products of labor done by judicial officers. The whole work done by the judges constitutes the authentic exposition and interpretation of the law which binding on every citizen is free for publication to all. Why is that case not on point with what we have here? Yes, Your Honor, we believe that that case is different than what we have here because this Court is discussing judge-made law that is law. I understand your point that it also covered parts of the case such as the headnotes that are not the law. It's not as if the Supreme Court was unaware that it had the actual holding of the court and in addition had this other stuff. Correct, Your Honor. What would fall into annotations. A headnote, a syllabus, that kind of thing. Yes, Your Honor. And said nevertheless the totality of it because it was put out by a judge in his official duties of interpreting and explicating the law was not copyrightable. It belonged, if you will, to the people. Yes, Your Honor. Why is that not pretty close to what we have here? The only difference being that it's the legislative body rather than the court that pronounces the law calls it A, B, and C. What's the difference between banks and what I have here? We believe that the distinguishing factor here is that in this case, Banks v. Manchester, the court was considering the fact that there is no need for a copyright incentive there. The judges have to render these decisions. They have to formulate these opinions as a part of their official job. The Supreme Court when looking at whether something is copyrightable that is not the law, that is not the part of a decision, in Callahan v. Meyer, did decide that those elements could be copyrighted by an official state reporter. The Supreme Court even then distinguished between elements created by a judge in his official capacity where he needs no copyright incentive and another entity that is creating annotations to judge-made law and found that those were uncopyrightable. I'd also like to point out that the annotations are not created by the legislature. They're created by the Code Revision Commission, which is not a law making body. That commission has legislative counsel on it. It has private practice attorneys on it. The Code Revision Commission cannot interpret the law, cannot make the law, and thus the annotations are distinguishable from the judge-made law. Let me ask you a final question. We didn't, really I didn't give you a chance to discuss this fair use thing, so why don't you say a couple words about that, if you would, thanks. Yes, thank you very much, Your Honor. We just wanted to make the point that public resource at best makes a more user-friendly version of the OCGA, and making something user-friendly, this Court has found in Peter letter S that making something user-friendly is not a transformation under the first factor, the fair use factor. So accordingly, public resources use of the OCGA should not be considered transformative. Let me ask you just one question. How we review the findings of the trial court judge? Do we review them for clear error? When he's doing, it's sort of a tricky question because when you look at affirmative, this is an affirmative defense, they've got to prove it by preponderance, but you go to a whole bunch of things including the purpose and the nature. The judge makes a finding on each of those subheadings. Are they reviewed for clear error as fact-finding, or are they reviewed alternatively de novo by this Court? Yes, Your Honor, we believe that as you've mentioned, the fair use analysis in particular is a mixed question of fact and law. There are certainly underlying facts that the parties have agreed on and stipulated to, and that's why both parties filed motions for summary judgment. The ultimate findings for each factor... Let me ask the question this way. To the extent the trial court says the purpose was not non-profit or educational, am I to review that for clear error, giving deference because it's plainly arguable, or do I look at that determination de novo as you read the controlling law? Your Honor, we believe that the subheading decisions, the decisions on Factor 1, Factor 2, that those are questions of law that should be reviewed de novo. That's where the parties disagree. But the determination of what the specific purpose was, that is to say whether or not it was for profit or for some other reason, we review that de novo too, as you see it? We do, Your Honor, in that those are legal determinations. The parties agree on those facts, but they disagree on the definition of those terms in the legal fair use sense. Let me ask you just my last question that's bothered me in reviewing this. To the extent there is fact-finding involved in what the trial court did on fair use, and there are also legal conclusions, the fact-finding I'd review for clear error, the legal conclusions I would review de novo. That's easy. But we're here on summary judgment. Yes, Your Honor. And if there's any principle that's clear in the law on summary judgment it is, is there a material question of fact in issue? If the answer is yes, then the trial judge doesn't get to say, I accept her version of the facts and reject his, or vice versa. Is that what the trial judge did here and can he do it using summary judgment on the issue of fair use? You follow my question? I am following your question, Your Honor. And we believe that the district court on the issue of fair use in particular, that there were no disagreements as to the underlying facts and where the disagreements were between the parties were with decisions of the law. If the court did make any decisions that were finding of facts, for example, on originality, that same analysis applies there, that the parties agreed on the underlying facts and that the district court did correctly. Got it. Thank you. I want to go back to the copyright threshold issue. Yes, Your Honor. Because I dealt with the Code of Georgia 1933. There was no annotated for many years. The Code of Georgia 1981 or whatever it was, it went on and on and on, but we had the official Code of Georgia annotated. And this is just a practical question because to me, Section 1-1-1 is pretty key to this case. Now, Section 1-1-1 is not a code matter. That is a legislative act. Is that correct? Yes, Your Honor. So that was enacted by the legislature. Yes, Your Honor. 1-1-1. And I know about 1-1-7. That helps you, but 1-1-1 is a problem. So why couldn't a legislator very easily amend 1-1-1 and say the official Code of Georgia is that version that Lexis is putting up there with no annotations? And everybody just psyched to that. Okay, that's the official Code of Georgia. However, we have a contract with Lexis. Everybody could just keep their same products here. You just need an amendment to 1-1-1 that says this is official code. It's already out there. Online and so forth. And then you take that black book with the appendices and all that. It's really big. I've got four rows of them in my office. It's got law review, cites, research notes, opinions of the Attorney General. All lawyers use it. They could even cite it to any court. I mean, we used to do that. It could be like citing federal practice and procedure with, you know, because you've had annotated to the federal law or what have you. I'm not saying they have to, must, or should. But wouldn't that solve the problem? What is the downside to that? Because you're making this the official code. Let me give you a statement in there. Opening brief, page 20. Public resource agrees that such annotations in unofficial codes are copyrightable by their private publishers. Okay, so the problem here is the naming of it is the official code as opposed to an unofficial code. The case goes away, I would say. So I'm trying to understand what is the practical problem with doing that? The one practical problem with saying that the what is put out online is the official code. You can put it in a book. You can put it in these libraries, 60 places like you've already done. It's no different. You're just calling one the official code. That's the law. That's the official law. Because you are saying all these other things over here that you're now calling official. You're saying they're official, but you're saying they have no binding effect of law. But yet you're saying they're official. Okay, so let's just focus on practicality. What is the problem with doing that? I would start by saying that the term official applies to the official code. That it's the official code of Georgia annotated. And so calling the official code the reason that the code is termed official is because the state has had issues in the past with people taking drafts of the code, what later became the code, and printed that as the code when it later changed a thousand times before it was actually the official code. I assume the online version that's without the annotations is accurate. It is accurate, Your Honor. Lexis could do the work to make the code right and just copy it over to the official code. Are you following what I'm saying? Yes, I am, Your Honor. Because you say here, demonstrating the official status, an annotation within the code. Well, that's an annotation. I don't like focusing on what annotations say. I'm just focusing on what the legislator says, not the co-commission. Because I agree, the co-commission is not a legislative body. It's not a lawmaker. Okay, but the problem is the law by the legislature which says this is it. Yes, Your Honor. The state could certainly publish a book with only the official code in it. Right. And so that's the official code. I'm not sure anybody would buy it. Everybody would still buy the official code annotated. Everybody would still buy the official code annotated. The case goes away. I mean, it's not an issue anymore. It does, Your Honor, but our position is there is no issue with combining the official code with annotations. There's no issue with combining it. It's an issue of calling it the official law. You can't cite anything else with this. Georgia Supreme Court cites it all the time. You have OCGAA. It used to be we didn't have OCGAA. You did OCG. You actually said the code of 19. I mean, you did it different ways. I'm just trying to understand, what is the practical problem with doing it the other way? The practical problem would be that the state would then need to pay for the publication of just the OCGAA, of the OCG. And I believe that the state wanted to try to save the taxpayers' money by also providing them with the annotations at the same time. The state really... Well, why can't they then just amend 111 then and say you still got the same book? The only part of this that's the official code is these are the statutes in there. Nothing else is the official code. Okay. They could amend and say 111 to make it consistent with it has no force of a law. It would be a lot clearer. Let's say you keep the same book. You just say this is the statutes are the official laws. The rest is just... I mean, you could clean it up and not merge it. Why does it need to merge? It could be in the same document, but you don't have to say it's merged and have all this language in 111. I believe that the state wasn't considering the term merged as indicating a single copyrightable unit. You've answered my question. I mean, they could rewrite it. They could rewrite it, but that wouldn't be because there's no due process access to the official code. That's being provided. No, it would be because what they created is not subject to copyright because it's an official legislative maybe done as a code by the direction of the legislature empowered them. It's like the code. I agree. The commission is not a legislative. They're a lawmaker. They're just a body. They're a commission. And the legislature has delegated the authority to do what they did and said, here's what we want you to do. Yes, Your Honor, but the statutes themselves are not subject to copyright. Everybody agrees about that. The question is whether this merged document is all one entity or we should tease it apart as Judge Marcus, but you've answered my question. Thank you very much. I have just one follow-up question from what Judge Hull asked. The legislative body chose to do this in this way. Why? What am I supposed to infer from the way they did it? What was the purpose of merging it and making the totality of this combine the official code of Georgia annotated? The legislature was trying to assist the citizens of Georgia by providing them with the annotations and really providing those annotations at a much lower cost, six times lower. But couldn't they have done it in the manner that Judge Hull suggested without merging and without characterizing it as the official code of Georgia annotated? They could have, but then there would be a cost to the taxpayers. A lot of this was that the state was trying to lower the cost to the taxpayers. So this falls under the heading of no good deed goes unpunished. I truly believe that the state was... That would be your suggestion, I suppose. I truly believe the state was trying to be as helpful as possible by producing the annotations, by producing them at a very low cost, which levels the playing field, and not charging the taxpayers for it. But couldn't they do that without calling it the official code? They most certainly could decide not to call any code the official code, but again, there they were trying to... They could say you can cite the annotated if you want to. You can cite the laws. We don't care. Actually cite the law. And then if it's been annotated, because some of these statutes don't have any annotations. There's not much there. There's very little there. A lot of them have... We don't want to look that up. It goes on forever. Yes, Your Honor. They could decide to create a code that is not called official, but again, they did that to try to help the citizens know what is approved by the state and what is not. I don't know if copyright law goes to what the motive behind or not behind. It goes to whether it's copyrightable is the problem here. And we all agree laws can't be copyrightable and we agree annotations can be copyrightable. They say that. Then what happens when you put them together and say these are the official laws and you can only cite it? That's what makes it harder. But you've answered my questions. Thank you very much. Thank you, Counselor. And Ms. Rader, you've reserved five minutes. Thank you, Your Honor. One point I wanted to make really in response to Judge Hull's question about whether the code commission is the right body to make the law or to make the annotations and if that makes it a state or an edict of government, I'd like to point out that the official code of Georgia annotated is ratified every year by the legislature. So it isn't as though the annotations are out there unendorsed. Every year the legislature... Well, there's ratification and there's ratification. What does the ratification say? It reenacts the official code. The whole thing. I wanted to respond to the idea that the legislature made this deal with the publisher to save the taxpayers money. One problem with this... Before you do that ... This is copyright law. It is what it is. It reenacts the official code. The whole thing. Now where do we find that? Is that cited in your brief? Is there a separate piece of legislation they do that in? I believe there is and I believe it's in our brief. There's a statue or I guess a bill or act they enact and say we hereby... Why do they have to keep doing it every year? Because I guess it gets combined. New bills change or there's new laws and old ones are repealed or something. Yes, codification is a continuous process. Do you agree the commission is not a lawmaker? You really need that new, that reenactment to have it be the law? Because the commission is not a lawmaker. They are not a lawmaker, but they are an edict emanating body. Okay, what does that mean? They are acting as agents for the legislature and making sure the annotations get prepared and that they're the annotations the legislature wanted to be in the official code. On the issue of fair use, you've got the burden. It's an affirmative defense to the extent that the trial judge made findings of fact. We would review them only for clear error, would we not? That's correct. Could he make findings of fact on summary judgment? Not where the facts were disputed. Did he make any findings of fact that were disputed? I think he did in finding that there was a legally recognizable profit for a public resource. That's legal error, is it not? It's legal error in the way he interpreted the law to hold that reputational benefit or other non-monetary benefits could make otherwise non-profit use commercial use. Those cases are outliers. They're not binding on this court and frankly, the court should clarify that that's not the law in the Eleventh Circuit. Let me go to 1-1-7. I focused on 1-1-1. 1-1-7 is also a legislative act which I think has to be read with 1-1-1. You agree with that? Yes. Right. And this makes it abundantly clear that the annotations, the editorial notes, the citation, law review articles, all of that has no force of effect of law. Yes. Okay. Therefore, other than saying it's labeling it the official code, if they put out if they didn't label it in a law the official code and they said, they put out that book and they say it's a compilation of Georgia statues, annotations and relevant legal, and they put it out would not clearly, and they don't make it the official code, but for the fact it's made the official code that would be okay as I understand your brief. That would be a much tougher case. No. You say here in your brief, that's why I want you to say the public resources agrees that annotations in unofficial codes are copyrightable by their publishers. The issue here is whether, that's where I got this question from because your brief, the state of Georgia can register in its own annotations in its only official code. So if they put this, I don't know whether they need to have an official code how they do an official code, whether it can be online how much available they have to make it or they just have to have the laws I don't know about all that, but I'm just taking that book I've got if they take off official code on it it's copyrightable everything in it except the laws themselves. Is that not correct? West produces it, puts all the laws there, they don't call it the official code. The official code is the official code of Georgia and they just make it available. They can make it in hard copy they can make it online, they can do however they want to do. Are you with me? They take off official, they amend 1.1 and just say the official code of Georgia is this and then we have this annotated, it's not the official code but it may also be cited in addition to the official code. Yes. They're fine then. That's what your brief says. Just taking off the word official No, I'm talking about going to amend, they've got to amend 1-1-1. They have to make it clear the annotations are not part of an edict of government, yes. You're right. Okay. And they didn't do that by expressly saying in 1-1-7 they're not having a force of law? No. How could that be clear that that's not an edict of government? Because elsewhere they repeat that the OGCA is what controls over any unofficial publication. Okay. So what's critical to you is that the legislature has pronounced this to be the law even though they say a piece of it doesn't have a binding effect. Yes. These are the annotated laws of the state. All right. Thank you very much. Thank you all for your efforts. It's an interesting case. We will take it under advisement and this court will be in recess until 9 a.m. tomorrow morning. Thank you all.